UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMIE LEE MORRIS,                                    Case No.: 22-13081
                          Plaintiff,
v.                                                    Shalina D. Kumar
                                                      United States District Judge
R. WHITE, *et al.*,
                          Defendants.                 Curtis Ivy, Jr.
_____/                       United States Magistrate Judge

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 26)

## I.      PROCEDURAL HISTORY

Plaintiff Jimmie Lee Morris filed this prisoner civil rights matter without

counsel during November 2022.  The case was removed to this Court and referred

to the undersigned for all pretrial matters.  (ECF No. 1, 14).  Plaintiff sues nine

Michigan Department of Corrections ("MDOC") employees at the G. Robert

Cotton Correctional Facility.  He alleges that between December 2020 and June

2021 he was not given the required seven-day sanction breaks for access to the

yard and recreation after 30 straight days of sanctions several times.  He raised the

issue in grievances and kites (letters to prison officials), but received no relief.   He

also alleged that some defendants retaliated against him for filing grievances.

Plaintiff's claims against Defendants Nagy, Napier, and Cobb were dismissed early

in the case, as were his claims for violations of the First Amendment, including

retaliation.  Only his claims about access to the yard and recreation under the

Eighth Amendment proceeded.  (ECF No. 8).

Remaining Defendants Bailey, King, McCabe, Rurka, White, and Young

moved for partial summary judgment on the basis of failure to exhaust

administrative remedies.  (ECF No. 26).  The motion is fully briefed and ready for

report and recommendation.

For the reasons below, the undersigned **RECOMMENDS** that the motion

for summary judgment be **GRANTED** and only certain claims against Defendants

McCabe, White, and Young proceed.

## II.    DISCUSSION

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome under governing law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the

evidence, all facts, and any inferences that may be drawn from the facts in the light

most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins.

Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

B.    Exhaustion under the PLRA

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Congress enacted

the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his or her claim.  *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").  Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). That said, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As a result, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

C.    Grievance Procedures at MDOC

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue. (ECF 26-2, PageID.86, at ¶ Q). If

the issues are not resolved within five business days, the inmate may file a Step I

grievance using the appropriate form. (*Id.*).  If the inmate is dissatisfied with the

Step I disposition, or does not receive a response by ten business days after the due

date, he or she may file a Step II grievance using the appropriate form. (*Id.* at

PageID.88, ¶ DD).  Similarly, if the inmate is dissatisfied with the Step II response

or does not receive a response by ten business days after the due date, the inmate

may file a Step III grievance. (*Id.* at PageID.89, ¶ HH).  The matter is fully

exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455

("A grievant must undertake all steps of the MDOC process for his grievance to be

considered fully exhausted.").

>    D.    Analysis

Defendants argue that Plaintiff did not exhaust all his claims against White,

Young, and McCabe, and exhausted none of his claims against King, Rurka, and

Bailey.  (ECF No. 26).  They assert that Plaintiff filed only two grievances through

the three-step process relating to the claims raised here, grievances JCF-1078 and

JCF-159.  JCF-1078 named only Defendant McCabe, JCF-159 named White and

Young.  Neither grievance named the other three defendants.  In their view, JCF-

1078 raised only McCabe's alleged conduct on June 22, 2021, and JCF-159

concerned only White and Young's alleged conduct on January 30, 2021.  So no

other claims could be exhausted by these grievances. (*Id.* at PageID.77-78).

In response, Plaintiff asserts that former Defendant Cobb refused to forward his Step II grievance appeals back to Plaintiff in grievances JCF-762, JCF-564, JCF-1012, JCF-801, and JCF-1078.  (ECF No. 31, PageID.186).  Without the Step II responses, he says he was unable to file these grievances to Step III.  (*Id.* at PageID.188).  He asserts that he tried to fully exhaust his claims against King, Rurka, and Bailey, but he does not point to grievances filed against them.  (*Id.*).  He insists his grievances meet the purpose of the PLRA—to make prison officials aware of civil rights violations.  (*Id.*).

In a supplemental response brief filed without leave, Plaintiff argues that Defendants not expressly named in his grievances bear some responsibility either as grievance respondents or as supervisors of those named in the grievances.  (ECF No. 32, PageID.193-94).  For instance, he alleges that Defendant McCabe responded to a Step I grievance about the lack of yard time in March 2021 by stating there was no policy violation.  Plaintiff insists this response was a cover-up for Defendant Young's policy violations.  (*Id.* at PageID.194).  He says that he named only Young and McCabe in the grievances because they were the only defendants involved in the grievance, and Defendants White, Bailey, and Rurka were the supervisors at varying times between December 2020 and July 2021.  (*Id.* at PageID.195).  Plaintiff argues next that MDOC's grievance policy requires the

grievant to send the Step I and Step II grievance responses to Step III in that appeal, but Cobb refused to return the Step II responses. (*Id.*).

In reply, Defendants point out that a grievant must appeal to Step III even if he or she does not receive a timely response from the prison at Step II, so Plaintiff's argument that appeals to Step III were thwarted without a Step II response has no merit. (ECF No. 33). As for Plaintiff's assertion that those not named are responsible because they were aware of the issues being grieved, Defendants contend that mere awareness of a claim does not exhaust the claim because the grievances do not challenge the unnamed individual's conduct. (ECF Nos. 33, 34).

In the view of the undersigned, Defendants' arguments are correct.

According to the Step III grievance report, Plaintiff filed only two grievances through Step III about the matters alleged here. Plaintiff does not contest this. His arguments that (1) he was thwarted from filing other grievances to Step III because he did not receive responses at Step II and (2) the unnamed defendants should not be dismissed because they were supervisors of those named or were otherwise aware of the issues are not well taken.

MDOC grievance policy does not require a Step III appeal to be written on or include the Step II response to be considered. The policy requires a Step III grievance be written on a Grievance Appeal form (CSJ-247B) within ten business

days after receiving the Step II response, "or, *if no response was received*, within ten business days after the date the response was due." (ECF No. 26-2, PageID.89, at ¶ HH) (emphasis added). The grievance policy expressly addresses the situation Plaintiff allegedly faced—wanting to appeal to Step III without a Step II response. Plaintiff needed to submit a timely Step III appeal, but failed to do so. Thus, any grievances filed at Step I but not appealed through to Step III because Plaintiff did not receive a response at Step II do not exhaust any claims.

In Plaintiff's response, he listed a few grievances he filed at Step I but contends he was thwarted from going to Step III because of the lack of a Step II response. Three of those grievances, however, were appealed to Step III. One, JCF-1078, Defendants concede exhausts the claim against McCabe that on June 22, 2021, McCabe issued Plaintiff an inaccurate memo about sanction breaks to deprive him of the breaks. The other two, JCF-801 and JCF-1012, do not concern the issues raised in this lawsuit. (*See* ECF No. 26, PageID.67-69; ECF No. 26-3, PageID.96-97, 106, 115-16).

Plaintiff's second argument that unnamed Defendants were supervisors and were aware of the issues is unavailing because awareness of an issue is not the same as exhausting administrative remedies on a claim against that person. *See Claybron v. DeAngelo*, 2023 WL 2572456, at *4 (E.D. Mich. Mar. 20, 2023) (DeAngelo had notice of the plaintiff's complaints but was not named at Step I and

the grievance did not give notice of a challenge to DeAngelo's conduct, so

DeAngelo was dismissed).  That unnamed prison officials might have had notice of

Plaintiff's complaints during the dates alleged is of no moment because, as shown

below, Plaintiff's grievances did not give notice of a claim against any of the

unnamed individuals.

MDOC grievance policy requires inmates to name each person grieved.

(ECF No. 26-2, PageID.86, ¶ S).  The point of this rule is to give fair notice of the

claims raised against the defendant prison official such that there is an opportunity

to resolve it.  But failure to name a defendant in a grievance is not always fatal to

the claim against that defendant.  When the facts in the grievance give the MDOC

sufficient information to identify the person(s) involved, the prisoner fulfills the

purposes of exhaustion even though he or she failed to identify the official by

name.  Thus, naming a prison official for the first time in an appeal can serve to

exhaust the claim against that office if the plaintiff "presents facts in his Step I

grievance that could place the prison on notice 'to conduct an investigation even

though the grievance did not necessarily identify the particular individuals who

might later be sued.'"  *Rresch v. Rink*, 2023 WL 3128455, at * 4 (W.D. Mich. Mar.

17, 2023) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007)

("The Sixth Circuit rule may promote early notice to those who might later be

sued, but that has not been thought to be one of the leading purposes of the exhaustion requirement.").

In JCF-1078 Step I grievance, Plaintiff asserted that Defendant McCabe issued an incorrect memo on June 22, 2021, that failed to include that Plaintiff be given a telephone call during his seven-day sanction break. (ECF No. 26-3, PageID.114). Plaintiff accuses McCabe of purposefully omitting the telephone call from the memo because she did not want Plaintiff or unit staff to know inmates on sanction breaks are allowed a telephone call. (*Id.*). This Step I grievance would not put prison officials on notice that Plaintiff would have a claim against anyone other than McCabe. Then, in his Step II appeal, Plaintiff reiterates the facts about McCabe's inaccurate memo and says that "ADW Bailey and RUM McCabe was 'obligated' to 'ensure' that all sanction break memos sent to inmates in seg 'includes' their right to one 15-minute phone call." (*Id.* at PageID.112). For the first time, Plaintiff named Defendant Bailey in this grievance. But as stated, the Step I grievance did not put prison officials on notice that Plaintiff had a claim against anyone other than McCabe about McCabe's June 22, 2021, memo. Nowhere at Step I did Plaintiff suggest that Bailey took part in the June 22, 2021, memo or that Plaintiff had an issue with Bailey's conduct or lack of action. For this reason, the undersigned concludes that JCF-1078 exhausts only the claim against McCabe about the sanction break memo on June 22, 2021.

12

At Step I in JCF-159, Plaintiff asserted that Defendant White failed to ensure that he receive recreation after serving 30 days of sanctions.  On the date of that grievance, Plaintiff had served more than 30 days without a break.  (*Id.* at PageID.148).  Plaintiff references the ARUS, Defendant Young, in this grievance. The date of the incident is January 20, 2021.  Like JCF-1078, nothing in this Step I grievance would put prison officials on notice that Plaintiff would later raise a claim against any other prison employee.  Thus, the undersigned concludes that JCF-159 exhausts only the claim against White and Young for failure to ensure Plaintiff received a sanction break on or around January 20, 2021.

In sum, Defendants Bailey, King, and Rurka's motion for summary judgment should be granted, and they should be dismissed.  Only the claim against McCabe about the sanction break memo on June 22, 2021, should proceed, as well as the claims against White and Young for failure to ensure a sanction break on or around January 22, 2021.  All other claims against McCabe, White, and Young should be dismissed.

## III.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion for partial summary judgment (ECF No. 26) be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:                                          s/Curtis Ivy, Jr.
                                               Curtis Ivy, Jr.
                                               United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on May 29, 2024.

s/Sara Krause
Case Manager
(810) 341-7850
